D-722-CV-201900066 - Tuesday, April 30, 2019

**Samantha Sullenger**

v.

**Central New Mexico Electric Cooperative, Inc.**

## CASE DETAIL

| CASE # | CURRENT JUDGE | FILING DATE | COURT |
|---|---|---|---|
| D-722-CV-201900066 | Murphy, Mercedes C. | 03/28/2019 | ESTANCIA  District |

## PARTIES TO THIS CASE

| PARTY TYPE | PARTY DESCRIPTION | PARTY # | PARTY NAME |
|---|---|---|---|
| D | Defendant | 1 | CENTRAL NEW MEXICO ELECTRIC COOPERATIVE, INC. |
| P | Plaintiff | 1 | SULLENGER SAMANTHA |

ATTORNEY: YOUTZ SHANE
ATTORNEY: MONTALBANO JAMES A.
ATTORNEY: CURTICE STEPHEN

## CIVIL COMPLAINT DETAIL

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 03/28/2019 | 1 | OPN: COMPLAINT | | |

| COA SEQ # | COA DESCRIPTION |
|---|---|
| 1 | Miscellaneous |

| PARTY NAME | PARTY TYPE | PARTY # |
|---|---|---|
| | | |

## REGISTER OF ACTIONS ACTIVITY

| EVENT DATE | EVENT DESCRIPTION | EVENT RESULT | PARTY TYPE | PARTY # | AMOUNT |
|---|---|---|---|---|---|
| 04/16/2019 | RETURN OF SERVICE | | D | 1 | |
| | Served to Matthew Collins, an Authorized Agent, on 4/10/19 by a Process Server | | | | |
| 04/10/2019 | | | | | |
| 04/10/2019 | AMENDED COMPLAINT | | | | |
| | First Amended Complaint | | | | |
| 03/28/2019 | JURY DEMAND 6 PERSON | | P | 1 | |
| | Jury Demand | | | | |
| 03/28/2019 | OPN: COMPLAINT | | P | 1 | |
| | Complaint for Discrimination, Hostile Work Environment, Retaliation and Trial De Novo | | | | |

## JUDGE ASSIGNMENT HISTORY

| ASSIGNMENT DATE | JUDGE NAME | SEQ # | ASSIGNMENT EVENT DESCRIPTION |
|---|---|---|---|
| 03/28/2019 | Murphy, Mercedes C. | 1 | INITIAL ASSIGNMENT |

**EXHIBIT A**

FILED
7th JUDICIAL DISTRICT COURT
Torrance County
3/28/2019 4:56 PM
ANGELA SIMPSON
CLERK OF THE COURT

**STATE OF NEW MEXICO**
**COUNTY OF TORRANCE**
**SEVENTH JUDICIAL DISTRICT**

**SAMANTHA SULLENGER,**

    **Plaintiff,**

**v.**                                **No.**  D-722-CV-2019-00066
                                                         _____

**CENTRAL NEW MEXICO ELECTRIC**
**COOPERATIVE, INC.,**                        Murphy, Mercedes C.

    **Defendant.**

## COMPLAINT FOR DISCRIMINATION, HOSTILE WORK ENVIRONMENT, RETALIATION AND TRIAL DE NOVO PURSUANT TO THE NEW MEXICO HUMAN RIGHTS ACT AND THE AMERICANS WITH DISABILITY ACT

COMES NOW Plaintiff, Samantha Sullenger, by and through her counsel, Youtz & Valdez, P.C. (Shane C. Youtz, Stephen Curtice and James A. Montalbano), and hereby files this Complaint for Discrimination, Hostile Work Environment, Retaliation and for a Trial De Novo Pursuant to the Human Rights Act and the Americans with Disabilities Act of 1990 and as grounds therefore states:

### Parties, Jurisdiction and Venue

1.     Plaintiff is a resident of Torrance County, New Mexico, and was employed by Defendant as Billing Specialist.

2.     Plaintiff is an "employee" as that term is defined in the Human Rights Act ("HRA"), NMSA 1978, § 28-1-2(E) (2007) and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111(4) (2008).

3.     Defendant operates an Electrical Cooperative within Torrance County, New Mexico.

4.    Defendant is an "employer" as that term is defined in NMSA 1978, § 1978, § 28-1-2(B) (2007) and 42 U.S.C. § 12111(5) (2008).

5.    This Court has personal jurisdiction over Defendant.

6.    This action is brought pursuant to the HRA, NMSA 1978, § 28-2-1 *et seq.* and the ADA, 42 U.S.C. § 12111 *et seq.*; this Court has subject-matter jurisdiction over those claims.

7.    Because Defendant does business in Torrance County, venue is proper in this Court pursuant to NMSA 1978, § 28-1-13(A) (2005).

## Factual Allegations

8.    Plaintiff was hired by Defendant on or about October 27, 2014, as a Billing Specialist.

9.    At all times relevant, her immediate supervisor was AMR Supervisor Alice Hennessey.

10.    At all times relevant, she was also supervised by CFO Alena Brandenberger.

11.    Plaintiff has a life-long disability; specifically, she has unilateral hearing loss in one ear.

12.    This disability constitutes a "physical … handicap" as that term is defined in the HRA, NMSA 1978, § 28-1-2(M) (2007) and a "disability" as that term is defined in the ADA, 42 U.S.C. § 12102.

13.    Defendant and its agents were well aware of Plaintiff's disability and regarded her as having such a disability.

14.    Defendant and its agents manifested their knowledge of Plaintiff's disability. Indeed, by way of examples only, and not as an exhaustive list of Defendant's knowledge of Plaintiff's disability:

2

a.     In December of 2015, one of Plaintiff's co-workers announced an idea of how to get Plaintiff's attention: "I'm going to buy everyone Nerf dart guns, and we can just shoot Sam with them until we get her attention, because she sure can't hear me calling her name."

b.     On numerous occasions, Plaintiff would observe a commotion and laughter going on outside of her office, but could not hear what was being said.  She walked out of her office and asked what was going on, and her co-workers would comment: "I thought you were deaf." or "I thought you couldn't hear; I bet it's just selective hearing."

c.     During a company meeting, Plaintiff told everyone how she was born with the umbilical cord wrapped around her neck, and how that was the cause of her deafness in her let ear, as well as her weak lung.

d.     In May of 2016, Plaintiff acquired a new dog and was planning on training it to be a service dog for her hearing.  She told Alena Brandenberger about this and that it could help with her hearing issues.  In response, Ms. Brandenberger stated: "You know I can't allow you to bring a dog in here."

15.     Plaintiff received only informal, undocumented and inadequate training regarding her job duties and expectations.

16.     Nonetheless, she received sufficiently good evaluations in 2015 and 2016 to earn a pay raise in each of those years.

17.     The areas of concern listed on Plaintiff's evaluations often involved Plaintiff's hearing.  Indeed, by way of examples only, and not as an exhaustive list, Defendant's agent CFO Alena Brandenberger noted on her performance evaluation that Plaintiff "often discontinues conversations mid-stream.  I have addressed this situation with her and when it is me that it is occurring with, I call her immediately and request her to look at me and engage."

3

18.     As a result of Plaintiff's disability, she has difficultly identifying conversational cues.   In the incidents CFO Alena Brandenberger was referencing in the evaluation, Ms. Brandenberger would walk in and Plaintiff thought she was talking with another employee.   Ms. Brandenberger would harshly snap her fingers at Plaintiff.   Plaintiff would grab her notepad to take notes, and turned her good ear towards Ms. Brandenberger, who responded by harshly telling her to look at her.

19.     Defendant, primarily but not exclusively through its agents CFO Alena Brandenberger and Alice Hennessey, subjected Plaintiff to an extreme and hostile work environment because of her disability.   Indeed, by way of examples only, and not as an exhaustive list of Defendant's creation of a hostile work environment:

a.     On a weekly basis, Plaintiff was harassed about her job performance, even though her error rates are outstanding and even though she had received praise for identifying issues and fixing mistakes of others.

b.     Plaintiff's work was nit-picked, but at the same time her repeated requests for adequate training and assistance due to her medical condition were denied.

c.     Plaintiff was told she could not ask questions when talking with CFO Alena Brandenberger and was directed to look at her, rather than tilting her good ear at her.

d.     In January of 2017, Plaintiff was written up for false and pretextual reasons.

e.     On or about March 3, 2017, Plaintiff was placed on a performance improvement plan (a disciplinary action and frequently a prelude to termination) for false and pretextual reasons.

f.     On or about March 6, 2017, Plaintiff met with CFO Alena Brandenberger, Plaintiff attempted to explain how her hearing impairment might be the cause of her belief that she

4

has "poor listening skills."  When explaining that she subconsciously turns her good ear to face a speaker, Ms. Brandenberger responded: "Whether it be subconscious or whatever, and we can try and rearrange your office if need be as long as it works for your co-workers, but whether that is the case or not, it is bad communication skills and I don't want it in the work place."

g.     On or about March 6, 2017, Accounting Supervisor Josh Gorman confronted Plaintiff about an erroneous $125 charge Plaintiff was alleged to have put on someone's account.  She had no idea what he was talking about, so told him that she would investigate.  She looked up the account and it noted that she had placed the charge for a broken meter, but Plaintiff had not placed the charge.  This was not the first error Plaintiff was alleged to have done which she did not remember doing.  She contacted the system programmers in St. Louis and explained the situation.  They indicated they would investigate.  After about three days, they contacted her and told her that someone had used her credentials to sign in from Alice Hennessey's computer in the Moriarty office and placed the charge.  Subsequently, Plaintiff discovered a (thankfully unsuccessful) attempt from her work computer while she was on leave to access her bank account; upon information and belief, this was an attempt to make it appear that she had received the $125 erroneously charged to the customer.

20.     Upon information and belief, on or about March 10, 2017, AMR Supervisor Alice Hennessey came into the Mountainair office and bragged that she was "Alena's little spy on Samantha," and was overheard talking with an employee:  "Don't worry, we are working on something to get her out, and that position is going to be yours."

21.     On or about March 13, 2017, and as a direct and proximate result of the acts and omissions of Defendant, Plaintiff had to take an extended FMLA leave of absence as she was

diagnosed with severe depression, anxiety and PTSD.  As noted by her counselor, this was caused by "the hurtful, degrading, and demeaning abuse happening at work."

22.     On or about March 14, 2017, Plaintiff timely filed a charge of discrimination with the EEOC (Case No. 543-2017-00508), regarding the hostile work environment she faced.

23.     On or about May 15, 2017, Plaintiff returned from her medical leave.

24.     Immediately upon her return, Defendant retaliated against Plaintiff for having filed the EEOC Charge.  Indeed, by way of examples only, and not as an exhaustive list of Defendant's retaliation:

      a.     All of Plaintiff's co-workers had moved their workstations to be as far away from Plaintiff as possible, and would not talk with her.

      b.     A newly-hired security guard (whose first day was Plaintiff's first day back) was stationed right outside of Plaintiff's office door.

      c.     Plaintiff was locked out of all of the computer programs necessary to perform her normal job duties.  She only had access to her email.

      d.     CFO Alena Brandenberger stood right outside of Plaintiff's office and spoke to another employee in an extremely loud voice:  "Ya know, as I have found out it's always the people who make the most fuss that are truly the problem."  She gave an example involving her kids.  The comment was clearly directed to Plaintiff.

      e.     Plaintiff had been removed from Company email lists, so that she was not getting notifications that her coworkers were.  She requested to be put back on the lists, but was met with cold indifference.

      f.     Plaintiff had spoken with Human Resources about an accommodation regarding the positioning of her desk.  She had asked that her desk face north, so that she could

hear when customers would come in.  Nonetheless, CFO Alena Brandenberger moved her desk to the middle of the common area (where the background noise made hearing more, not less, difficult), facing south, and right in front of the women's restroom.  When a co-worker expressed concern about this placement, Accounting Supervisor Josh Gorman made the statement: "What's it matter, she can't hear anyway."

       g.    On or about May 30, 2017, Plaintiff was informed that the Performance Improvement Plan was back in place.  She noted that several of the items she was expected to do on the PIP had been removed from her updated job description.  Still, the PIP was put in place.

25.    On or about June 14, 2017, Plaintiff timely filed a charge of discrimination with the EEOC (Case No. 543-2017-00793), regarding the retaliation she faced for her prior charge.

26.    On or about June 30, 2017, Defendant terminated Plaintiff's employment on the false and pretextual grounds that her performance had not improved (despite the fact that, due to their retaliation noted above, she was unable to do any of her work).  In actuality, they terminated her because of her disability and/or in retaliation for her charges filed with the EEOC.

27.    On or about April 11, 2018, Plaintiff timely filed a third charge with the EEOC (No. 543-2018-00586) regarding her termination.

28.    As noted, Plaintiff timely filed three separate charges with the EEOC (Nos. 543-2017-00508, 543-2017-00793, and 543-2018-00586) covering the allegations herein.

29.    Based on a letter fromf the Human Rights Bureau dated December 31, 2018, and received shortly thereafter by Plaintiff regarding EEOC No. 543-2018-00586, this Complaint is timely if filed on or before March 29, 2018 for Plaintiff's claims under the New Mexico HRA.

30.    By letters dated February 20, 2019, and February 27, 2019, the EEOC closed its investigation of the three charges, allowing Plaintiff to bring this action under the ADA.

31.     Plaintiff has exhausted her administrative remedies as it relates to all three of those charges and all of the allegations in this Complaint.

## Count I:  Discrimination Based on Disability
### (New Mexico Human Rights Act)

32.     Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

33.     Plaintiff has a physical handicap, as that term is defined in the HRA.

34.     Defendant was aware of Plaintiff's physical handicap, and regarded her as having that condition.

35.     Plaintiff was qualified to perform the essential functions of her job.

36.     By the acts and omissions noted above, including but not limited to her pretextual discipline, her altered working conditions, and her pretextual termination, Defendant discharged and/or discriminated against Plaintiff in matter of the terms, conditions or privileges of her employment because of her physical handicap, in violation of NMSA 1978, § 28-1-7(A) (2008).

37.     Pursuant to NMSA 1978, § 28-1-10(J) (2005), Plaintiff is entitled to a trial de novo with respect to her claims of discrimination under the New Mexico Human Rights Act.

38.     As a direct and proximate result of Defendant's acts and omissions, Plaintiff has sustained damages, and is entitled to recover her all of her actual damages, together with attorney's fees and costs pursuant to the HRA.

## Count II:  Hostile Work Environment Based on Disability
### (New Mexico Human Rights Act)

39.     Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

40.     By the acts and omissions noted above, Defendant has created a workplace that is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe to alter the conditions of Plaintiff's employment and create an abusive working environment.

41.     Defendant created this hostile work environment based on, and because of, Plaintiff's disability in violation of NMSA 1978, § 28-1-7(A) (2008).

42.     Pursuant to NMSA 1978, § 28-1-10(J) (2005), Plaintiff is entitled to a trial de novo with respect to her claims of discrimination under the New Mexico Human Rights Act.

43.     As a direct and proximate result of Defendant's acts and omissions, Plaintiff has sustained damages, and is entitled to recover her all of her actual damages, together with attorney's fees and costs pursuant to the HRA.

**Count III:  Retaliation**
**(New Mexico Human Rights Act)**

44.     Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

45.     By filing EEOC charges and seeking accommodation for her disability, Plaintiff has "opposed any unlawful discriminatory practice or has filed a complaint, testified or participated in any proceeding under the Human Rights Act," within the meaning of NMSA 1978, § 28-1-7(I) (2008).

46.     By the acts and omissions noted above, Defendant took adverse employment actions against Plaintiff, and engaged in "threats, reprisal or discrimination" against Plaintiff.

47.     Defendant's acts and omissions were casually connected to Plaintiff's protected activity.

48.     Pursuant to NMSA 1978, § 28-1-10(J) (2005), Plaintiff is entitled to a trial de novo with respect to her claims of discrimination under the New Mexico Human Rights Act.

49.     As a direct and proximate result of Defendant's acts and omissions, Plaintiff has sustained damages, and is entitled to recover her all of her actual damages, together with attorney's fees and costs pursuant to the HRA.

## Count IV:  Discrimination Based on Disability
### (Americans with Disabilities Act)

50.     Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

51.     Plaintiff has a disability, as that term is understood in the ADA.

52.     Defendant was aware of Plaintiff's disability, and regarded her as having that condition.

53.     Plaintiff was qualified to perform the essential functions of her job.

54.     The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

55.     By the acts and omissions noted above, including but not limited to her pretextual discipline, her altered working conditions, and her pretextual termination, Defendant discharged and/or discriminated against Plaintiff in matter of the terms, conditions or privileges of her employment because of her physical handicap, in violation of the ADA.

56.     As a direct and proximate result of Defendant's acts and omissions, Plaintiff has sustained damages, and is entitled to recover her all of her actual damages, together with attorney's fees and costs pursuant to the ADA.

## Count V:  Hostile Work Environment Based on Disability
### (Americans with Disabilities Act)

57.     Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

58.     By the acts and omissions noted above, Defendant has created a workplace that is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe to alter the conditions of Plaintiff's employment and create an abusive working environment.

10

59.     Defendant created this hostile work environment based on, and because of, Plaintiff's disability in violation of the ADA.

60.     As a direct and proximate result of Defendant's acts and omissions, Plaintiff has sustained damages, and is entitled to recover her all of her actual damages, together with attorney's fees and costs pursuant to the ADA.

## Count VI:  Retaliation
### (Americans with Disabilities Act)

61.     Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

62.     By filing EEOC charges and seeking accommodation for her disability, Plaintiff has "opposed any practice made an unlawful employment practice …, or … has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing …," within the meaning of 42 U.S.C. § 2000e-3(a).

63.     By the acts and omissions noted above, Defendant discriminated against Plaintiff because of her protected activity.

64.     Defendant's acts and omissions were casually connected to Plaintiff's protected activity.

65.     As a direct and proximate result of Defendant's acts and omissions, Plaintiff has sustained damages, and is entitled to recover her all of her actual damages, together with attorney's fees and costs pursuant to the ADA.

## Count VII:  Retaliatory Discharge
### (New Mexico Common Law)

66.     Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

67.     The termination of Plaintiff's employment for the reasons described above contravenes a clear mandate of public policy, making Defendant liable to Plaintiff in tort under the New Mexico law of Retaliatory Discharge.

68.     As a direct and proximate result of Defendant's acts and omissions, Plaintiff has sustained damages, and is entitled to recover her all of her actual damages.

<b>Punitive Damages</b>

69.     Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

70.     Through one or more of the above Counts, Plaintiff can state a cause of action for which she would be entitled to compensatory damages.

71.     By the acts and omissions noted above, Defendant has acted in bad faith, recklessly dishonestly, maliciously, willfully and/or wantonly.

72.     Punitive damages are appropriate to punish Defendant and to deter others from the commission of like offenses.

**WHEREFORE**, Plaintiff respectfully requests that this Court

A.      Enter judgment in her favor;

B.      Award her all of her actual damages;

C.      Award her punitive damages, to the greatest extent allowed by the law;

D.      Award her attorney's fees and costs of this litigation;

E.      Award her any other relief this Court finds just and proper.

Dated: March 28, 2019                    Respectfully submitted,

                                         **YOUTZ & VALDEZ, P.C.**


                                         _____/s/ Stephen Curtice_____
                                         Shane C. Youtz

shane@youtzvaldez.com
Stephen Curtice
stephen@youtzvaldez.com
James A. Montalbano
james@youtzvaldez.com
900 Gold Avenue SW
Albuquerque, NM  87102
(505) 244-1200
*Attorneys for Plaintiffs*


I hereby certify that a true and correct copy
of the foregoing pleading electronically filed
this 28th day of March, 2019, and mailed to the
following, via certified US mail, return receipt
requested:

STATE OF NEW MEXICO
DEPARTMENT OF WORKFORCE SOLUTIONS
Labor Relations Division - Human Rights Bureau
1596 Pacheco St., Ste. 103
Santa Fe, NM 87505-3979
*Certified No. 7001 0360 0003 2449 9358*


Central New Mexico Electric Cooperative, Inc.
Suzy Edmonds, HR Manager
P.O. Box 669
Moriarty, NM  87035
*Certified No. 7001 2510 0000 7420 4834*


Equal Employment Opportunity Commission
Phoenix District Office
3300 North Central Ave., Ste. 690
Phoenix, AZ  85012
*Certified No. 7001 2510 0000 74204827*


_____*/s/ Stephen Curtice*_____
Stephen Curtice

FILED
7th JUDICIAL DISTRICT COURT
Torrance County
3/28/2019 4:56 PM
ANGELA SIMPSON
CLERK OF THE COURT
/s/ Thomas Wilson

**STATE OF NEW MEXICO**
**COUNTY OF TORRANCE**
**SEVENTH JUDICIAL DISTRICT**

**SAMANTHA SULLENGER,**

     **Plaintiff,**

                                              D-722-CV-2019-00066

**v.**                                  **No.** _____

**CENTRAL NEW MEXICO ELECTRIC**
**COOPERATIVE, INC.,**

     **Defendant.**

**JURY DEMAND**

COMES NOW Plaintiff Samantha Sullenger, by and through her counsel of record, Youtz

and Valdez, P.C. (Shane Youtz, Stephen Curtice and James A. Montalbano), and hereby demands

that this matter be heard by a jury of six (6) persons and hereby deposits, concurrently with the

filing fee, jury demand fees in the amount of $150.00.

Dated: March 28, 2019          Respectfully submitted,

                                 **YOUTZ & VALDEZ, P.C.**

                                 _____*/s/ Stephen Curtice*_____
                                 Shane C. Youtz
                                 shane@youtzvaldez.com
                                 Stephen Curtice
                                 stephen@youtzvaldez.com
                                 James A. Montalbano
                                 james@youtzvaldez.com
                                 900 Gold Avenue SW
                                 Albuquerque, NM 87102
                                 (505) 244-1200
                                 *Attorneys for Plaintiffs*

I hereby certify that a true and correct copy

of the foregoing pleading electronically filed
this 28th day of March, 2019, and mailed to the
following, via certified US mail, return receipt
requested:

STATE OF NEW MEXICO
DEPARTMENT OF WORKFORCE SOLUTIONS
Labor Relations Division - Human Rights Bureau
1596 Pacheco St., Ste. 103
Santa Fe, NM 87505-3979
*Certified No. 7001 0360 0003 2449 9358*


Central New Mexico Electric Cooperative, Inc.
Suzy Edmonds, HR Manager
P.O. Box 669
Moriarty, NM  87035
*Certified No. 7001 2510 0000 7420 4834*


Equal Employment Opportunity Commission
Phoenix District Office
3300 North Central Ave., Ste. 690
Phoenix, AZ  85012
*Certified No. 7001 2510 0000 74204827*


        */s/ Stephen Curtice*
Stephen Curtice

FILED
7th JUDICIAL DISTRICT COURT
Torrance County
4/10/2019 10:56 AM
ANGELA SIMPSON
CLERK OF THE COURT
/s/ Thomas Wilson

**STATE OF NEW MEXICO**
**COUNTY OF TORRANCE**
**SEVENTH JUDICIAL DISTRICT**

**SAMANTHA SULLENGER,**

     **Plaintiff,**

v.                             **No. D-722-CV-2019-00066**

**CENTRAL NEW MEXICO ELECTRIC**
**COOPERATIVE, INC.,**

     **Defendant.**

## FIRST AMENDED COMPLAINT FOR DISCRIMINATION, HOSTILE WORK ENVIRONMENT, RETALIATION AND TRIAL DE NOVO PURSUANT TO THE NEW MEXICO HUMAN RIGHTS ACT AND THE AMERICANS WITH DISABILITY ACT

COMES NOW Plaintiff, Samantha Sullenger, by and through her counsel, Youtz & Valdez, P.C. (Shane C. Youtz, Stephen Curtice and James A. Montalbano), and hereby files this First Amended Complaint for Discrimination, Hostile Work Environment, Retaliation and for a Trial De Novo Pursuant to the Human Rights Act and the Americans with Disabilities Act of 1990 and as grounds therefore states:

### Parties, Jurisdiction and Venue

1.     Plaintiff is a resident of Torrance County, New Mexico, and was employed by Defendant as Billing Specialist.

2.     Plaintiff is an "employee" as that term is defined in the Human Rights Act ("HRA"), NMSA 1978, § 28-1-2(E) (2007) and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111(4) (2008).

3.     Defendant operates an Electrical Cooperative within Torrance County, New Mexico.

4.      Defendant is an "employer" as that term is defined in NMSA 1978, § 1978, § 28-1-2(B) (2007) and 42 U.S.C. § 12111(5) (2008).

5.      This Court has personal jurisdiction over Defendant.

6.      This action is brought pursuant to the HRA, NMSA 1978, § 28-2-1 *et seq.* and the ADA, 42 U.S.C. § 12111 *et seq.*; this Court has subject-matter jurisdiction over those claims.

7.      Because Defendant does business in Torrance County, venue is proper in this Court pursuant to NMSA 1978, § 28-1-13(A) (2005).

**Factual Allegations**

8.      Plaintiff was hired by Defendant on or about October 27, 2014, as a Billing Specialist.

9.      At all times relevant, her immediate supervisor was CFO Alena Brandenberger.

10.     At all times relevant, she was also supervised by AMR Supervisor Alice Hennessey.

11.     Plaintiff has a life-long disability; specifically, she has unilateral hearing loss in one ear.

12.     This disability constitutes a "physical … handicap" as that term is defined in the HRA, NMSA 1978, § 28-1-2(M) (2007) and a "disability" as that term is defined in the ADA, 42 U.S.C. § 12102.

13.     Defendant and its agents were well aware of Plaintiff's disability and regarded her as having such a disability.

14.     Defendant and its agents manifested their knowledge of Plaintiff's disability. Indeed, by way of examples only, and not as an exhaustive list of Defendant's knowledge of Plaintiff's disability:

2

a.      In December of 2015, one of Plaintiff's co-workers announced an idea of how to get Plaintiff's attention:  "I'm going to buy everyone Nerf dart guns, and we can just shoot Sam with them until we get her attention, because she sure can't hear me calling her name."

b.      On numerous occasions, Plaintiff would observe a commotion and laughter going on outside of her office, but could not hear what was being said.  She walked out of her office and asked what was going on, and her co-workers would comment: "I thought you were deaf." or "I thought you couldn't hear; I bet it's just selective hearing."

c.      During a company meeting, Plaintiff told everyone how she was born with the umbilical cord wrapped around her neck, and how that was the cause of her deafness in her let ear, as well as her weak lung.

d.      In May of 2016, Plaintiff acquired a new dog and was planning on training it to be a service dog for her hearing.  She told Alena Brandenberger about this and that it could help with her hearing issues.  In response, Ms. Brandenberger stated: "You know I can't allow you to bring a dog in here."

15.     Plaintiff received only informal, undocumented and inadequate training regarding her job duties and expectations.

16.     Nonetheless, she received sufficiently good evaluations in 2015 and 2016 to earn a pay raise in each of those years.

17.     The areas of concern listed on Plaintiff's evaluations often involved Plaintiff's hearing.  Indeed, by way of examples only, and not as an exhaustive list, Defendant's agent CFO Alena Brandenberger noted on her performance evaluation that Plaintiff "often discontinues conversations mid-stream.  I have addressed this situation with her and when it is me that it is occurring with, I call her immediately and request her to look at me and engage."

3

18.     As a result of Plaintiff's disability, she has difficultly identifying conversational cues.   In the incidents CFO Alena Brandenberger was referencing in the evaluation, Ms. Brandenberger would walk in and Plaintiff thought she was talking with another employee.   Ms. Brandenberger would harshly snap her fingers at Plaintiff.   Plaintiff would grab her notepad to take notes, and turned her good ear towards Ms. Brandenberger, who responded by harshly telling her to look at her.

19.     Defendant, primarily but not exclusively through its agents CFO Alena Brandenberger and Alice Hennessey, subjected Plaintiff to an extreme and hostile work environment because of her disability.   Indeed, by way of examples only, and not as an exhaustive list of Defendant's creation of a hostile work environment:

        a.      On a weekly basis, Plaintiff was harassed about her job performance, even though her error rates are outstanding and even though she had received praise for identifying issues and fixing mistakes of others.

        b.      Plaintiff's work was nit-picked, but at the same time her repeated requests for adequate training and assistance due to her medical condition were denied.

        c.      Plaintiff was told she could not ask questions when talking with CFO Alena Brandenberger and was directed to look at her, rather than tilting her good ear at her.

        d.      In January of 2017, Plaintiff was written up for false and pretextual reasons.

        e.      On or about March 3, 2017, Plaintiff was placed on a performance improvement plan (a disciplinary action and frequently a prelude to termination) for false and pretextual reasons.

        f.      On or about March 6, 2017, Plaintiff met with CFO Alena Brandenberger, Plaintiff attempted to explain how her hearing impairment might be the cause of her belief that she

4

has "poor listening skills." When explaining that she subconsciously turns her good ear to face a speaker, Ms. Brandenberger responded: "Whether it be subconscious or whatever, and we can try and rearrange your office if need be as long as it works for your co-workers, but whether that is the case or not, it is bad communication skills and I don't want it in the work place."

g.      On or about March 6, 2017, Accounting Supervisor Josh Gorman confronted Plaintiff about an erroneous $125 charge Plaintiff was alleged to have put on someone's account. She had no idea what he was talking about, so told him that she would investigate. She looked up the account and it noted that she had placed the charge for a broken meter, but Plaintiff had not placed the charge. This was not the first error Plaintiff was alleged to have done which she did not remember doing. She contacted the system programmers in St. Louis and explained the situation. They indicated they would investigate. After about three days, they contacted her and told her that someone had used her credentials to sign in from Alice Hennessey's computer in the Moriarty office and placed the charge. Subsequently, Plaintiff discovered a (thankfully unsuccessful) attempt from her work computer while she was on leave to access her bank account; upon information and belief, this was an attempt to make it appear that she had received the $125 erroneously charged to the customer.

20.      Upon information and belief, on or about March 10, 2017, AMR Supervisor Alice Hennessey came into the Mountainair office and bragged that she was "Alena's little spy on Samantha," and was overheard talking with an employee: "Don't worry, we are working on something to get her out, and that position is going to be yours."

21.      On or about March 13, 2017, and as a direct and proximate result of the acts and omissions of Defendant, Plaintiff had to take an extended FMLA leave of absence as she was

diagnosed with severe depression, anxiety and PTSD.  As noted by her counselor, this was caused by "the hurtful, degrading, and demeaning abuse happening at work."

22.     On or about March 14, 2017, Plaintiff timely filed a charge of discrimination with the EEOC (Case No. 543-2017-00508), regarding the hostile work environment she faced.

23.     On or about May 15, 2017, Plaintiff returned from her medical leave.

24.     Immediately upon her return, Defendant retaliated against Plaintiff for having filed the EEOC Charge.  Indeed, by way of examples only, and not as an exhaustive list of Defendant's retaliation:

        a.      All of Plaintiff's co-workers had moved their workstations to be as far away from Plaintiff as possible, and would not talk with her.

        b.      A newly-hired security guard (whose first day was Plaintiff's first day back) was stationed right outside of Plaintiff's office door.

        c.      Plaintiff was locked out of all of the computer programs necessary to perform her normal job duties.  She only had access to her email.

        d.      CFO Alena Brandenberger stood right outside of Plaintiff's office and spoke to another employee in an extremely loud voice:  "Ya know, as I have found out it's always the people who make the most fuss that are truly the problem."  She gave an example involving her kids.  The comment was clearly directed to Plaintiff.

        e.      Plaintiff had been removed from Company email lists, so that she was not getting notifications that her coworkers were.  She requested to be put back on the lists, but was met with cold indifference.

        f.      Plaintiff had spoken with Human Resources about an accommodation regarding the positioning of her desk.  She had asked that her desk face north, so that she could

hear when customers would come in.  Nonetheless, CFO Alena Brandenberger moved her desk to the middle of the common area (where the background noise made hearing more, not less, difficult), facing south, and right in front of the women's restroom.  When a co-worker expressed concern about this placement, Accounting Supervisor Josh Gorman made the statement: "What's it matter, she can't hear anyway."

g.      On or about May 30, 2017, Plaintiff was informed that the Performance Improvement Plan was back in place.  She noted that several of the items she was expected to do on the PIP had been removed from her updated job description.  Still, the PIP was put in place.

25.     On or about June 14, 2017, Plaintiff timely filed a charge of discrimination with the EEOC (Case No. 543-2017-00793), regarding the retaliation she faced for her prior charge.

26.     On or about June 30, 2017, Defendant terminated Plaintiff's employment on the false and pretextual grounds that her performance had not improved (despite the fact that, due to their retaliation noted above, she was unable to do any of her work).  In actuality, they terminated her because of her disability and/or in retaliation for her charges filed with the EEOC.

27.     On or about April 11, 2018, Plaintiff timely filed a third charge with the EEOC (No. 543-2018-00586) regarding her termination.

28.     As noted, Plaintiff timely filed three separate charges with the EEOC (Nos. 543-2017-00508, 543-2017-00793, and 543-2018-00586) covering the allegations herein.

29.     Based on a letter fromf the Human Rights Bureau dated December 31, 2018, and received shortly thereafter by Plaintiff regarding EEOC No. 543-2018-00586, this Complaint is timely if filed on or before March 29, 2018 for Plaintiff's claims under the New Mexico HRA.

30.     By letters dated February 20, 2019, and February 27, 2019, the EEOC closed its investigation of the three charges, allowing Plaintiff to bring this action under the ADA.

7

31.     Plaintiff has exhausted her administrative remedies as it relates to all three of those charges and all of the allegations in this Complaint.

### Count I:  Discrimination Based on Disability
### (New Mexico Human Rights Act)

32.     Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

33.     Plaintiff has a physical handicap, as that term is defined in the HRA.

34.     Defendant was aware of Plaintiff's physical handicap, and regarded her as having that condition.

35.     Plaintiff was qualified to perform the essential functions of her job.

36.     By the acts and omissions noted above, including but not limited to her pretextual discipline, her altered working conditions, and her pretextual termination, Defendant discharged and/or discriminated against Plaintiff in matter of the terms, conditions or privileges of her employment because of her physical handicap, in violation of NMSA 1978, § 28-1-7(A) (2008).

37.     Pursuant to NMSA 1978, § 28-1-10(J) (2005), Plaintiff is entitled to a trial de novo with respect to her claims of discrimination under the New Mexico Human Rights Act.

38.     As a direct and proximate result of Defendant's acts and omissions, Plaintiff has sustained damages, and is entitled to recover her all of her actual damages, together with attorney's fees and costs pursuant to the HRA.

### Count II:  Hostile Work Environment Based on Disability
### (New Mexico Human Rights Act)

39.     Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

40.     By the acts and omissions noted above, Defendant has created a workplace that is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe to alter the conditions of Plaintiff's employment and create an abusive working environment.

41.     Defendant created this hostile work environment based on, and because of, Plaintiff's disability in violation of NMSA 1978, § 28-1-7(A) (2008).

42.     Pursuant to NMSA 1978, § 28-1-10(J) (2005), Plaintiff is entitled to a trial de novo with respect to her claims of discrimination under the New Mexico Human Rights Act.

43.     As a direct and proximate result of Defendant's acts and omissions, Plaintiff has sustained damages, and is entitled to recover her all of her actual damages, together with attorney's fees and costs pursuant to the HRA.

**Count III:  Retaliation**
**(New Mexico Human Rights Act)**

44.     Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

45.     By filing EEOC charges and seeking accommodation for her disability, Plaintiff has "opposed any unlawful discriminatory practice or has filed a complaint, testified or participated in any proceeding under the Human Rights Act," within the meaning of NMSA 1978, § 28-1-7(I) (2008).

46.     By the acts and omissions noted above, Defendant took adverse employment actions against Plaintiff, and engaged in "threats, reprisal or discrimination" against Plaintiff.

47.     Defendant's acts and omissions were casually connected to Plaintiff's protected activity.

48.     Pursuant to NMSA 1978, § 28-1-10(J) (2005), Plaintiff is entitled to a trial de novo with respect to her claims of discrimination under the New Mexico Human Rights Act.

49.     As a direct and proximate result of Defendant's acts and omissions, Plaintiff has sustained damages, and is entitled to recover her all of her actual damages, together with attorney's fees and costs pursuant to the HRA.

**Count IV:  Discrimination Based on Disability**
**(Americans with Disabilities Act)**

50.     Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

51.     Plaintiff has a disability, as that term is understood in the ADA.

52.     Defendant was aware of Plaintiff's disability, and regarded her as having that condition.

53.     Plaintiff was qualified to perform the essential functions of her job.

54.     The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

55.     By the acts and omissions noted above, including but not limited to her pretextual discipline, her altered working conditions, and her pretextual termination, Defendant discharged and/or discriminated against Plaintiff in matter of the terms, conditions or privileges of her employment because of her physical handicap, in violation of the ADA.

56.     As a direct and proximate result of Defendant's acts and omissions, Plaintiff has sustained damages, and is entitled to recover her all of her actual damages, together with attorney's fees and costs pursuant to the ADA.

**Count V:  Hostile Work Environment Based on Disability**
**(Americans with Disabilities Act)**

57.     Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

58.     By the acts and omissions noted above, Defendant has created a workplace that is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe to alter the conditions of Plaintiff's employment and create an abusive working environment.

10

59.     Defendant created this hostile work environment based on, and because of, Plaintiff's disability in violation of the ADA.

60.     As a direct and proximate result of Defendant's acts and omissions, Plaintiff has sustained damages, and is entitled to recover her all of her actual damages, together with attorney's fees and costs pursuant to the ADA.

**Count VI:  Retaliation**
**(Americans with Disabilities Act)**

61.     Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

62.     By filing EEOC charges and seeking accommodation for her disability, Plaintiff has "opposed any practice made an unlawful employment practice …, or … has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing …," within the meaning of 42 U.S.C. § 2000e-3(a).

63.     By the acts and omissions noted above, Defendant discriminated against Plaintiff because of her protected activity.

64.     Defendant's acts and omissions were casually connected to Plaintiff's protected activity.

65.     As a direct and proximate result of Defendant's acts and omissions, Plaintiff has sustained damages, and is entitled to recover her all of her actual damages, together with attorney's fees and costs pursuant to the ADA.

**Count VII:  Retaliatory Discharge**
**(New Mexico Common Law)**

66.     Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

11

67.     The termination of Plaintiff's employment for the reasons described above contravenes a clear mandate of public policy, making Defendant liable to Plaintiff in tort under the New Mexico law of Retaliatory Discharge.

68.     As a direct and proximate result of Defendant's acts and omissions, Plaintiff has sustained damages, and is entitled to recover her all of her actual damages.

**Punitive Damages**

69.     Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

70.     Through one or more of the above Counts, Plaintiff can state a cause of action for which she would be entitled to compensatory damages.

71.     By the acts and omissions noted above, Defendant has acted in bad faith, recklessly dishonestly, maliciously, willfully and/or wantonly.

72.     Punitive damages are appropriate to punish Defendant and to deter others from the commission of like offenses.

**WHEREFORE**, Plaintiff respectfully requests that this Court

A.     Enter judgment in her favor;

B.     Award her all of her actual damages;

C.     Award her punitive damages, to the greatest extent allowed by the law;

D.     Award her attorney's fees and costs of this litigation;

E.     Award her any other relief this Court finds just and proper.

Dated: April 10, 2019                    Respectfully submitted,

                                         YOUTZ & VALDEZ, P.C.


                                         _____/s/ Stephen Curtice_____
                                         Shane C. Youtz

12

shane@youtzvaldez.com
Stephen Curtice
stephen@youtzvaldez.com
James A. Montalbano
james@youtzvaldez.com
900 Gold Avenue SW
Albuquerque, NM  87102
(505) 244-1200
*Attorneys for Plaintiffs*

I hereby certify that a true and correct copy
of the foregoing pleading electronically filed
this 10th day of April, 2019, and mailed to the
following, via certified US mail, return receipt
requested:

STATE OF NEW MEXICO
DEPARTMENT OF WORKFORCE SOLUTIONS
Labor Relations Division - Human Rights Bureau
1596 Pacheco St., Ste. 103
Santa Fe, NM 87505-3979
*Certified No. 7001 2510 0000 7420 5404*


Central New Mexico Electric Cooperative, Inc.
Suzy Edmonds, HR Manager
P.O. Box 669
Moriarty, NM  87035
*Certified No. 7001 2510 0000 7420 8733*


Equal Employment Opportunity Commission
Phoenix District Office
3300 North Central Ave., Ste. 690
Phoenix, AZ  85012
*Certified No. 7001 2510 0000 7420 8726*


_____*/s/ Stephen Curtice*_____
Stephen Curtice

13

**SUMMONS**

|  |  |
|---|---|
| SEVENTH JUDICIAL DISTRICT COURT<br>COUNTY OF TORRANCE<br>STATE OF NEW MEXICO<br><br>COURT ADDRESS: PO Box 78<br>908 N. 5TH STREET<br>ESTANCIA, NM 87016<br>COURT TELEPHONE NUMBER:<br>(505) 384-2974 | Case No. D-722-CV-2019-00066<br><br>FILED<br>7th JUDICIAL DISTRICT COURT<br>Torrance County<br>4/16/2019 8:18 AM<br>ANGELA SIMPSON<br>CLERK OF THE COURT<br>*/s/ Laura Pugatch*<br><br>JUDGE: The Honorable Mercedes C. Murphy |
| Samantha Sullenger,           Plaintiff,<br><br>v.<br><br>Central New Mexico Electric Cooperative, Inc.,<br>           Defendant. | **To:  Central New Mexico Electric Cooperative, Inc.** |

**TO THE ABOVE NAMED RESPONDENT(S): Take notice that:**

1.      A lawsuit has been filed against you.  A copy of the lawsuit is attached.  The Court issued this Summons.
2.      You must respond to this lawsuit in writing.  You must file your written response with the Court no later than thirty (30) days from the date you were served with this Summons.  (The date you are considered served with the Summons is determined by Rule 1-004 NMRA).  The Court's address is listed above.
3.      You must file (in person or by mail) your written response with the Court.  When you file your response, you must give or mail a copy to the person who signed the lawsuit.
4.      If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.
5.      You are entitled to a jury trial in most types of lawsuits.  To ask for a jury trial, you must request one in writing and pay a jury fee.
6.      If you need an interpreter, you must ask for one in writing.
7.      You may wish to consult a lawyer.  You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; or 1-800-876-6657; or 1-505-797-6066.

Dated at ___Estancia___, New Mexico, this 10th day of __April__, 2019.

By: _____
    Thomas Wilson

_____/s/ Shane Youtz_____
Signature of Attorney for Plaintiff
Shane Youtz (shane@youtzvaldez.com )
Stephen Curtice (stephen@youtzvaldez.com)
James Montalbano (james@youtzvaldez.com)
YOUTZ & VALDEZ, P.C.
900 Gold Ave. SW
Albuquerque, NM  87102
(505) 244-1200 – Telephone

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO RULES OF CIVIL
PROCEDURE FOR DISTRICT COURTS.

**RETURN**

STATE OF NEW MEXICO       )
                           ) ss.
COUNTY OF _Torrance_     )

       I, being duly sworn on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I
served this Summons in _Torrance_ county on the _10_ day of _April_, 20_19_, by delivering a copy of this
Summons, with a copy of Complaint attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]       to the Defendant _____ (*used when Defendant accepts a copy of Summons and Complaint or refuses to accept the
              Summons and Complaint*)

[ ]       to the Defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or
              commercial courier service*).

After attempting to serve the Summons and Complaint on the Defendant by personal service or by mail or commercial courier
service, by delivering a copy of this Summons, with a copy of Complaint attached, in the following manner:

[ ]       to _____, a person over fifteen (15) years of age and residing at the usual place of
              abode of Defendant _____, (*used when the Defendant is not presently at place of abode*) and
              by mailing by first class mail to the Defendant at _____ (*insert Defendant's last known mailing
              address*) a copy of the Summons and Complaint.

[ ]       to _____, the person apparently in charge at the actual place of business or employment of the Defendant and
              by mailing by first class mail to the Defendant at _____ (*insert Defendant's business address*) and
              by mailing the Summons and Complaint by first class mail to the Defendant at _____ (*insert Defendant's
              last known mailing address*)

[X]      to _Matthew Collins_ an agent authorized to receive service of process for Defendant _Central NM Electric Cooperative, Inc._

[ ]       to _____ [parent] [guardian] [custodian] [conservator] [guardian *ad litem*] of Defendant _____, (*used when
              Defendant is a minor or an incompetent person*).

[ ]       to _____ (*name of person*), _____ (*title of person authorized to receive service. Use this
              alternative when the Defendant is a corporation or an association subject to a suit under a common name, a land grant
              board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____

                                       Signature of Person Making Service

                                       _Process Server_
                                       Title (if any)

        Subscribed and sworn to before me this _11_ day of _April_, 20_19_

(Seal)

                      OFFICIAL SEAL
                      Jacqueline Lopez
                      NOTARY PUBLIC
                    STATE OF NEW MEXICO            Judge, Notary or Other Officer
                    My Commission Expires: _2/16/20_    Authorized to Administer Oaths

My commission expires: _2/16/20_

                                         _Notary_
                                         Official Title